J-S33021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| BRANDON ANTHONY WARRINGTON | : | |
| Appellant | : | No. 1925 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 21, 2018
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0005154-2015

BEFORE:  LAZARUS, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED JULY 12, 2019**

Brandon Anthony Warrington appeals from the judgment of sentence imposed on August 21, 2018, in the Court of Common Pleas of Dauphin County.  The trial court sentenced Warrington to an aggregate term of two and one-half to five years' imprisonment, followed by nine years' probation, after he was convicted by a jury of statutory sexual assault, aggravated indecent assault (two counts), indecent assault (two counts), unlawful contact with a minor, and corruption of minors.[1]  On appeal, Warrington argues the verdict was against the weight of the evidence.  For the reasons discussed below, we affirm.

---

[1] 18 Pa.C.S.A. §§ 3122.1, 3125(a)(1) and (8), 3126(a)(1) and (8), 6318, and 6301(a)(1)(ii), respectively.

The trial court summarized the facts underlying Warrington's conviction as follows:

On August 5, 2015, the victim, [], went to the Hummelstown Carnival with a few friends.  The victim had met Mr. Warrington through her friend [].  On the date of the incident, the victim had gone to her brother's home so that she could be picked up by [] Warrington and driven to the carnival.  On their way to the carnival, [] Warrington and [the victim] [went] to pick up their mutual friend [], and two others [ ].

When the group of them arrive[d] at the carnival, they walk[ed] around for a short time.  [] Warrington ask[ed] [the victim] if she wanted to spend some time together privately, and she agree[d].  They [left] the carnival in [] Warrington's car, and dr[o]ve around for approximately thirty minutes.  Eventually, he stop[ped] at a local church that is surrounded by a wooded area with a nature trail.  The two of them exit[ed] the vehicle and beg[a]n to walk the nature trail.  At some point as they [were] walking the trail, they happen[ed] upon a clearing and stop[ped] to continue the conversation they [were] having.  During their time in the clearing, [the victim]'s friend [] call[ed] her to ask where she and [] Warrington had gone.  After [the victim]'s and [her friend's] conversation end[ed], she tosse[d] her phone to the side.  As [the victim]'s testimony described, the next thing she remembered was being pushed to the ground.  As she [was] lying face up on the ground, [] Warrington position[ed] himself over the top of the victim's body by placing his hands on her chest.  Unable to get out from underneath [] Warrington, [the victim] beg[a]n to scratch at his arms in an attempt to get out of the position.  He then proceed[ed] by removing her clothing.  He penetrate[d] her digitally, perform[ed] oral sex on her, and then proceed[ed] to have intercourse with her.  During this, she [told] him no approximately five to six times, and at no point d[id] he stop.  As per [the victim]'s testimony, she stop[ped] struggling at some point because she realized that she wasn't going to be able to stop what was happening to her.  After, [the victim] testified that she remembered going back to the carnival with [] Warrington but was unable to recall the details of how they got back to his car or when she put her clothes back on.

Upon arriving back at the carnival, [the victim] explain[ed] to her friend [] what had happened between her and [] Warrington.

Others described [the victim] as being visibly upset when she and [] Warrington came back. That evening after arriving at her home, [the victim] also testified to telling her brother what had happened with [] Warrington. In [the victim]'s words, she did not report what had happened because she felt that no one would believe her. [the victim] also t[old] [another] friend [] what had happened between her and [] Warrington. It [was] not until [this friend] contact[ed] one of [the victim]'s mother's friends that [the victim]'s parents f[ound] out what had happened. [The victim]'s parents t[ook] her to Good Samaritan Hospital and there she [met] with a [Sexual Assault Forensics Examiner(SAFE)] nurse and the nurse conduct[ed] an examination on her. That evening, she [was] also interviewed by police. During that interview, it was revealed that [the victim] was only fifteen years old, and [] Warrington was twenty-two.

When [the victim] was examined by Ms. Houser, the SAFE Nurse, Ms. Houser had indicated that [the victim] had told her the same story that she had told everyone else. Ms. Houser testified that [the victim] presented to her with bruises around her neck and lower abdomen above her groin, scratches on her right side, bruising on her left inner thigh, and vertical scratches from her upper to mid back. There were no visual findings in her genital area. Ms. Houser indicated that [the victim] was very tearful during the entire exam and acted as if she was ashamed because she didn't make eye contact and left her hair draped over her face.

After speaking to [the victim], police did conduct a search of the area where the incident was alleged to have occurred. During the search, [o]fficers had found a used condom and wrapper in a small clearing along the nature trail. Photos taken of [] Warrington by [o]fficers revealed marks on his upper right bicep area, bruising on his upper right chest area, and a scratch or injury mark to the back-shoulder area. [] Warrington revealed during interviews with the police that he had engaged in consensual intercourse with [the victim].

Trial Court Opinion, 2/13/2019, at 1-4 (record citations and footnotes omitted).

Warrington was subsequently charged with thirteen offenses. A jury trial took place in May 2018. On May 23, 2018, the jury convicted Warrington

of the aforementioned offenses, but found him not guilty of rape, sexual assault, aggravated indecent assault by forcible compulsion, indecent assault by forcible compulsion, unlawful restraint, and simple assault.[2] On August 21, 2018, the trial court sentenced Warrington to an aggregate term of two and one-half to five years' imprisonment, followed by nine years of probation. On August 30, 2018, Warrington filed a timely post-sentence motion, challenging the weight of the evidence supporting his convictions and seeking a modification of his sentence. The trial court denied the motion on November 14, 2018. This timely appeal followed.[3]

In his sole issue on appeal, Warrington contends that the verdict was against the weight of the evidence.[4] Warrington's Brief, at 15-19. A weight of the evidence claim concedes the sufficiency of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Our review of a challenge to the weight of the evidence supporting the verdict is settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is

---

[2] *See* 18 Pa.C.S. § 3121(a)(1), 3124.1, 3125(a)(2), 3126(a)(2), 2902(a)(1), and 2701(a), respectively.

[3] On November 27, 2018, the trial court ordered Warrington to file a concise statement of errors complained of on appeal. On November 29, 2018, Warrington filed a timely Rule 1925(b) statement. On February 13, 2019, the trial court filed an opinion.

[4] Warrington preserved this claim by filing a post-sentence motion. *See* Pa. R.Crim.P. 607; Post-Sentence Motion, 8/30/2018, at 4.

not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Rosser***, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

Here, Warrington contends the verdict was against the weight of the evidence because his "version of a consensual, sexual encounter with the complaining witness was corroborated by the complaining witness' own testimony."[5] Warrington's Brief at 15. He insists the victim gave "conflicting accounts of what actually occurred … in order to mislead the investigation." *Id.* at 16-17. Warrington claims the victim "intentionally omitted vital

---

[5] Although Warrington does specify the convictions he is challenging, it is evident his assertion that the sexual encounter was consensual only undermines his convictions of aggravated indecent assault, 18 Pa.C.S. § 3125(a)(1), and indecent assault, 18 Pa.C.S. § 3126(a)(1). His convictions of statutory sexual assault, aggravated indecent assault under subsection (a)(8) and indecent assault under subsection (a)(8), do not require a consent element. Rather, those offenses are based upon the age of the victim (less than 16 years of age), and the age of the defendant (four or more years older). *See* 18 Pa.C.S. §§ 3122.1(a)(1), 3125(a)(8), and 3126(a)(8).

information" about her relationship with him when speaking to police and the SAFE nurse, including the fact that she and Warrington (a) exchanged text messages about sex; (b) communicated after the alleged assault; and (c) bit each other, which left marks on her neck. *Id.* at 17. Warrington asserts the victim misled both the nurse and police into believing the marks on her neck were from the assault. *See id.* Furthermore, Warrington argues the victim's testimony corroborated his account that the encounter was consensual. *See id.* at 17-18. Indeed, she acknowledged she exchanged text messages with Warrington hours before the encounter in which she stated she wanted to have sex with him, and she brought condoms to the carnival, which she showed to him before voluntarily leaving with him. *See id.* at 18. Moreover, Warrington maintains the jury believed the encounter was consensual because they acquitted him of rape, sexual assault, aggravated indecent assault by forcible compulsion and indecent assault by forcible compulsion. *See id.* at 19. Accordingly, he argues his convictions were inconsistent with the other verdicts. *See id.*

In its opinion, the trial court denied Warrington's weight of the evidence claim, citing the testimony of the victim. *See* Trial Court Opinion, 2/13/2019, at 7-8. Although the court properly cited the standard for a weight of the evidence argument, its analysis reads more like a sufficiency claim. *See id.* Nevertheless, it is evident from the court's discussion that it found no basis to

overturn the jury's verdict and credibility determinations. We, in turn, find no abuse of discretion on the part of the trial court. *See Rosser*, *supra*.

The victim described in detail the events leading up to and during Warrington's non-consensual sexual assault. *See* N.T., 5/22-23/2018, at 35-47. Both the Commonwealth and defense counsel questioned the victim regarding the text messages she exchanged with Warrington both before and after the assault, which in some ways, contradicted her allegations of non-consent. *See id.* at 51-55, 62-68, 71-77, 82-83. Nevertheless, the jury found the victim's testimony credible, and, accordingly, convicted Warrington of the above-referenced crimes. We agree with the trial court's conclusion that the verdict does not "shock one's sense of justice." *Rosser*, *supra*, 135 A.3d at 1090.

Furthermore, with respect to Warrington's claim that the jury's verdict was inconsistent, we note:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment.

*Commonwealth v. Thoeun Tha*, 64 A.3d 704, 711 (Pa. Super. 2013). Accordingly, Warrington is entitled to no relief.

Judgment of sentence affirmed.

- 7 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>07/12/2019</u>